# Richmond

## McDowall & Wood, Inc. v. Maury W. Kilby.

January 18, 1971.

Record No. 7223.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Harrison and Cochran, JJ.

*Philip M. Sadler (Roby K. Sutherland; Gilmer, Sadler, Ingram, Thomas & Sutherland,* on brief), for plaintiff in error.

*Stuart B. Campbell, Jr. (Campbell & Campbell,* on brief) for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

Maury W. Kilby, appellee, initiated an action against McDowall & Wood, Inc. (McDowall), the general contractor on a highway project, to recover damages for personal injuries he sustained when a car he was driving ran into a ditch across a closed portion of U. S. Route 11 (now Interstate 81) in Wythe County. The ditch had been dug by McDowall during the course of construction. A jury trial was had and a verdict was returned in favor of Kilby for the sum of $70,000. The trial court overruled McDowall's motion to set aside the verdict and entered judgment thereon. We granted McDowall a writ of error to that judgment.

McDowall has resolved its assignments of error into these questions:

"(1) Did plaintiff [Kilby] prove primary negligence on the part of defendant [McDowall]?

"(2) Was plaintiff guilty of contributory negligence and/or assumption of the risk as a matter of law?

"(3) Did the Trial Court err in giving Instructions Nos. 1, 2-A, and 3 *** over the objection of the defendant?"

McDowall had a contract with the State Highway Department to rebuild and relocate a section of Route 11 so that it would conform to interstate highway standards. Route 11 was a four-lane highway running east-west in Wythe county and was composed of dual lanes divided by a 100-foot wide grass median. On June 26, 1967 it became necessary to close the two westbound lanes to vehicular traffic between a point west of Fort Chiswell where Route 11 intersected with Route 52 and a point east of Fort Chiswell where it merged into Interstate 81, a distance of about two miles. At both ends of the closed section, appropriate signs and barricades were erected, and westbound traffic was diverted into the eastbound lane of Route 11.

Witnesses for McDowall testified that black and white striped barrels had been placed at the crossovers connecting the eastbound and westbound lanes within the closed area to indicate the crossovers were closed.

In the restricted area, the eastbound lane was divided by solid double yellow lines, and signs were posted stating "two-way traffic", "no passing", and a speed limit of 25 miles an hour.

On June 30, 1967 McDowall, pursuant to the terms of its contract, commenced excavating a ditch across the closed westbound lane in order to install a box culvert. At the time of the accident the ditch was approximately 20 feet wide and 15 feet deep.

On July 10, 1967 State Trooper Maury W. Kilby was working the midnight shift. As a part of his duties he was responsible for patrolling Interstate 81 and Route 11 in Wythe county. At approximately 5:00 a.m., he left Wytheville and proceeded east on Route 11. The weather was foggy in the area. When he arrived at Fort Chiswell, the fog had "gotten very bad" and "it seemed to be a rolling fog". Kilby decided, after passing Fort Chiswell, that since the fog was so dense he would return to Wytheville and have breakfast. He then proceeded to the first crossover connecting the eastbound and westbound lanes of Route 11, turned left onto the closed westbound lane, drove about 500 feet and then into the ditch dug by McDowall.

Kilby testified that his headlights "penetrated very little through the fog" but they focused on a pile of dirt on the west side of the ditch. He then realized that "it hadn't been filled" and "jammed his

brakes in an attempt to stop." He said, "*** I was too close to stop before getting into the ditch." Although there was conflicting testimony, Kilby stated there were no barriers either at the crossover or in front of the ditch.

Kilby further testified that while patrolling the highway sometime before the accident he had observed work being done on the ditch and had seen a "big shovel with a tall boom" parked in front of it. He also stated that he knew the westbound lane of Route 11 had been closed to vehicular traffic and that the eastbound lane had been converted for two-way traffic. He was aware of the "no passing" and "two-way traffic" signs erected along the eastbound lane. Kilby also said that on the morning of the accident he did not know whether the ditch had been filled, but since the "big shovel" had been moved he "presumed that the ditch was closed."

In the view we take of the case, it is not necessary to decide whether the evidence was sufficient to establish primary negligence on the part of McDowall, or whether the court erred in granting certain instructions. We find the evidence viewed in the light most favorable to Kilby shows, as a matter of law, that he assumed the risk when he ventured down the closed section of Route 11, thereby barring him from a recovery.

We have said that the essence of assumption of risk is "venturousness—the voluntary assumption of a known hazard." The doctrine of assumption of risk is based on two premises: "(1) that the nature and extent of the risk are fully appreciated; and (2) that it is voluntarily incurred." *Davis* v. *Sykes*, 202 Va. 952, 954, 121 S.E.2d 513, 514 (1961). *Shook* v. *Barksdale*, 206 Va. 45, 48, 141 S.E.2d 738, 741 (1965).

Kilby was a state trooper and had served in that capacity for 29 years. He patrolled the area in which the accident occurred. His testimony shows that he was familiar with the work being done on Route 11 and he knew that the westbound lane had been closed to vehicular traffic for some time before the accident. When Kilby turned at the crossover just east of Fort Chiswell he knew he was where the westbound lane of Route 11 had been closed. Further, he stated he knew a ditch had been dug across the westbound lane, but he said he presumed that the ditch had been filled since a large shovel near the ditch had been removed. Yet, aware of the situation Kilby elected to use the closed westbound lane instead of the eastbound lane that had been converted for two-way traffic. Kilby was in no way a stranger to the situation that existed. By voluntarily proceeding on

the presumption that the ditch was filled Kilby assumed the risk that it might be unfilled. We conclude that the evidence conclusively establishes that Kilby fully appreciated the nature and extent of the risk and that he voluntarily assumed it.

*Reversed and final judgment.*