COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


JOHN J. BAHEN, JR.
                                          OPINION BY
v.    Record No. 0500-98-2        JUDGE JAMES W. BENTON, JR.
                                          JULY 6, 1999
COUNTY OF HENRICO


              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      L. A. Harris, Jr., Judge

          John J. Bahen, Jr., pro se.

          (Roger W. Frydrychowski, Assistant
          Commonwealth's Attorney, on brief), for
          appellee.


     A police officer issued a summons to John J. Bahen, Jr., for

driving thirty-five miles per hour in a zone with a posted speed

limit of twenty-five miles per hour.  The summons cited Code

§ 46.2-874 and Henrico Code § 22-2.  On appeal from a conviction

for speeding, Bahen contends the trial judge erred in ruling that

the street on which he was driving was in a "residence district."

We affirm the conviction.

                                I.

     The facts concerning the event that gave rise to the issuance

of the summons are undisputed.  Bahen was driving south on Charles

Street where the speed limit was posted as twenty-five miles per

hour.  When he was between Park Avenue and West Franklin Street, a

radar device operated by a Henrico County police officer

registered the speed of Bahen's vehicle at thirty-five miles per hour.  At trial, Bahen conceded he was driving in excess of the posted speed limit.  Instead, relying on Brooks v. Painter, 225 Va. 400, 302 S.E.2d 66 (1983), and Thoms v. Dowdy, 201 Va. 581, 112 S.E.2d 868 (1960), Bahen argued that the portion of Charles Street on which he was driving in excess of the twenty-five miles per hour posted speed limit was not a "residence district," see Code § 46.2-100, and, therefore, that the speed limit was improperly posted as twenty-five miles per hour.

After the police officer testified concerning the events that caused him to issue the summons, Bahen sought to prove through cross-examination of the officer and testimony of various County traffic engineers that the character of the land contiguous to Charles Street did not meet the definition of "residence district."  At the conclusion of the evidence, the trial judge ruled that the contiguous land "meets the definition of the residence area, and is so properly speed limited at [twenty-five] miles per hour."  The trial judge also found that Bahen had conceded the accuracy of the radar and ruled that Bahen was driving at thirty-five miles per hour in violation of the posted limit.

## II.

Generally, "[t]he maximum speed limit on . . . highways shall be fifty-five miles per hour if the vehicle is a passenger motor vehicle."  Code § 46.2-870.  That general rule is subject to many

statutory exceptions.  See e.g. Code §§ 46.2-870 through 46.2-883.

For example, "[n]otwithstanding the other [statutory] provisions

[governing speed], the Commonwealth Transportation Commissioner or

other authority having jurisdiction over highways may decrease the

speed limits set forth in [Code] § 46.2-870 and may increase or

decrease the speed limits set forth in [Code] §§ 46.2-873 through

46.2-875 on any highway under its jurisdiction."  Code § 46.2-878.

Any speed limit that is increased or decreased pursuant to Code

§ 46.2-878 "shall be effective only when prescribed after a

traffic engineering investigation," which is filed as prescribed

in the statute, "and when indicated on the highway by signs."  Id.

The statute further provides that "[w]henever the speed limit on

any highway has been increased or decreased . . . and such speed

limit is properly posted, there shall be a rebuttable presumption

that the change in speed was properly established."  Id.[1]

---

[1] The full text of Code § 46.2-878 is as follows:

> Notwithstanding the other provisions of this
> article, the Commonwealth Transportation
> Commissioner or other authority having
> jurisdiction over highways may decrease the
> speed limits set forth in [Code] § 46.2-870
> and may increase or decrease the speed
> limits set forth in [Code] §§ 46.2-873
> through 46.2-875 on any highway under its
> jurisdiction; and may establish
> differentiated speed limits for daytime and
> nighttime by decreasing for nighttime
> driving the speed limits set forth in [Code]
> § 46.2-870 and by increasing for daytime or
> decreasing for nighttime the speed limits
> set forth in [Code] §§ 46.2-873 through
> 46.2-875 on any highway under his [or her]

In addition, the legislature has empowered "[t]he governing bodies of counties, cities, and towns [to] adopt ordinances not in conflict with the [Motor Vehicle Code] to regulate the operation of vehicles on the highways in such counties, cities, and towns . . . and may erect appropriate signs . . . on the highway showing the general regulations applicable to the operation of vehicles on such highways."  Code § 46.2-1300(A).[2]  See also Nelson v. County

jurisdiction.  Such increased or decreased speed limits and such differentiated speed limits for daytime and nighttime driving shall be effective only when prescribed after a traffic engineering investigation and when indicated on the highway by signs. It shall be unlawful to operate any motor vehicle in excess of speed limits established and posted as provided in this section.  The increased or decreased speed limits over highways under the control of the Commonwealth Transportation Commissioner shall be effective only when prescribed in writing by the Transportation Commissioner and kept on file in the Central Office of the Department of Transportation.  Whenever the speed limit on any highway has been increased or decreased or a differential speed limit has been established and such speed limit is properly posted, there shall be a rebuttable presumption that the change in speed was properly established in accordance with the provisions of this section.

[2] The full text of Code § 46.2-1300 is as follows:

A.  The governing bodies of counties, cities, and towns may adopt ordinances not in conflict with the provisions of this title to regulate the operation of vehicles on the highways in such counties, cities, and towns.  They may also repeal, amend, or modify such ordinances and may erect

appropriate signs or markers on the highway showing the general regulations applicable to the operation of vehicles on such highways.  The governing body of any county, city, or town may by ordinance, or may by ordinance authorize its chief administrative officer to:

1. Increase or decrease the speed limit within its boundaries, provided such increase or decrease in speed shall be based upon an engineering and traffic investigation by such county, city or town and provided such speed area or zone is clearly indicated by markers or signs;

2. Authorize the city or town manager or such officer thereof as it may designate, to reduce for a temporary period not to exceed sixty days, without such engineering and traffic investigation, the speed limit on any portion of any highway of the city or town on which work is being done or where the highway is under construction or repair;

3. Require vehicles to come to a full stop or yield the right-of-way at a street intersection if one or more of the intersecting streets has been designated as a part of the state highway system in a town which has a population of less than 3,500.

B.  No such ordinance shall be violated if at the time of the alleged violation the sign or marker placed in conformity with this section is missing, substantially defaced, or obscured so that an ordinary observant person under the same circumstances would not be aware of the existence of the ordinance.

C.  No governing body of a county, city, or town may provide penalties for violating a provision of an ordinance adopted pursuant to this section which is greater than the penalty imposed for a similar offense under the provisions of this title.

of Henrico, 10 Va. App. 558, 393 S.E.2d 644 (1990) (decided under Code § 46.1-180, the precursor to Code § 46.2-1300).  This statute specifically authorizes the governing body or, when properly delegated, the chief administrative officer to "[i]ncrease or decrease the speed limit within its boundaries, provided such increase or decrease in speed shall be based upon an engineering and traffic investigation . . . and provided such speed area . . . is clearly indicated by . . . signs."  Code § 46.2-1300(A)(1).

### III.

At trial and on this appeal, Bahen argued that the evidence proved he was driving on a highway that was not in a "residence district" as specified in Code § 46.2-874 and defined in Code § 46.2-100.  The record establishes that a substantial portion of the proof at trial concerned that issue and the application of the Brooks and Thoms decisions to the facts of this case.  Indeed, at one point during the taking of the evidence the trial judge indicated that "[we are] down to the very narrow issue of whether it's a residence district or not."

We conclude, however, that we need not determine whether the County's interpretation of "residence district," which was

---

D.  No county whose roads are under the jurisdiction of the Department of Transportation shall designate, in terms of distance from a school, the placement of flashing warning lights unless the authority to do so has been expressly delegated to such county by the Department of Transportation, in its discretion.

accepted by the trial judge, comports with the Supreme Court's holding in Brooks concerning the proper way to view "land improved for dwelling purposes" as that term is used in the Code § 46.2-100 definition of "residence district." See Brooks, 225 Va. at 404, 303 S.E.2d at 68-69.[3] The Commonwealth prosecuted Bahen for violating the posted speed limit. Bahen raised as his defense the theory that the Commonwealth could not prevail absent proof that he was in a "residence district." Although much of the evidence concerned the character of Charles Street and the definition of "residence district," the following colloquy occurred during the presentation of evidence:

> MR. BAHEN: I'm trying to establish that I was driving at a safe speed.
>
> THE COURT: Well, but again, you were not charged with driving unsafe. You're just charged with driving above the speed limit. So I really don't think that's relevant, unless you can tell me some reason that it would be, I'd be glad to hear it.
>
> I mean, you're not charged with reckless driving, and you're not charged -- you're just charged with a prohibited crime of driving above the posted speed limit, and that's it.
>
> MR. BAHEN: Your Honor, I would offer that I'm not charged with driving above the posted speed limit, I'm charged with

---

[3] Although both Brooks and Thoms were negligence cases, clearly the interpretation of "residence district" found in those cases would be valid and applicable in a traffic violation prosecution. We note, however, that in both of those cases, no speed limit was posted. See Brooks, 225 Va. at 402, 302 S.E.2d at 67; Thoms, 201 Va. at 582-83, 112 S.E.2d at 869-70.

speeding in a residential district, Section 874 of the Code of Virginia.

THE COURT:  Yeah.

MR. BAHEN:  Forty-six --

THE COURT:  Speed 35 miles per hour in a 25 mile per hour zone is what the summons says.

MR. BAHEN:  The law section of the summons says 874, and 874 has -- there's nothing, nothing in 874 about the posted speed limit, Your Honor.

THE COURT:  The code section is merely advisory.  The crime you're charged with is what is stated in the charge and that's speeding 35 miles per hour in a 25 mile per hour zone.  They could put no code section or the wrong code section and that is not controlling.  What is controlling is the stated word that gives you notice of what your charge is.  So that's what I take it you're being charged with.  All right?  So is there any reason that it's relevant as to whether you were driving safely or unsafely?

MR. BAHEN:  No further questions.

THE COURT:  Thank you.

MR. BAHEN:  But I would like to further discuss the -- according to Your Honor that Commonwealth had every opportunity to amend the warrant if they thought they had a code section that I had violated . . . .

The undisputed evidence at trial proved that the speed limit for the portion of the highway on which Bahen was driving was posted by a sign to be twenty-five miles per hour.  Bahen concedes that he was exceeding the posted speed limit.  The Motor Vehicle laws explicitly state that "[a]ll drivers of vehicles shall obey lawfully erected signs."  Code § 46.2-830. Furthermore, "[i]t shall be unlawful to operate any motor vehicle

in excess of speed limits established and posted as provided [by the Commissioner or other authority having jurisdiction over highways]." Code § 46.2-878. In applying these proscriptions in cases where "the speed limit on any highway has been increased or decreased . . . and such speed limit is properly posted, there shall be a rebuttable presumption that the change in speed was properly established in accordance with the provisions of this section." Code § 46.2-878.

The testimony of the traffic engineer for the County established that the records of the traffic engineering division "go back to 1976 and . . . do not show that there has been a change of speed limit since 1976." He further testified that if the posted speed limit was not the original speed limit, he had no records to show a change. No evidence in the record proved whether the speed limit sign was initially posted by the County or the Commissioner. Accordingly, we hold that the evidence in the record failed to rebut the presumption that the speed limit was properly established. Thus, we affirm the trial judge's ruling that Bahen was driving in excess of the posted speed limit.

<u>Affirmed.</u>