# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Michael J. Tocci

Case No. 11-217

Commonwealth of Virginia

v.

Marcela T. Liguria

Case No. 11-230

Commonwealth of Virginia

v.

John Francis Valosky

Case No. 11-229

Commonwealth of Virginia

v.

Bonnie E. Baird

Case No. 11-233

Commonwealth of Virginia

v.

John E. Curry, IV

Case No. 11-251

Commonwealth of Virginia
  v.

Turner Barringer

Case No. 11-275

March 12, 2012

By Judge Edward L. Hogshire

This consolidated traffic case is on appeal from the General District Court and is reviewed *de novo*. Va. Code § 16.1-136; *Sasson v. Shenhar,* 276 Va. 611, 625, n. 10, 667 S.E.2d 555, 562, n. 10 (2008). Six defendants, Michael J. Tocci, Marcela T. Liguria, John Francis Valosky, Bonnie E. Baird, John E. Curry, IV, and Turner Barringer, have each moved to dismiss the decisions of the Charlottesville General District Court finding them guilty of speeding in violation of § 46.2-875 of the Code of Virginia. Because their cases are substantially similar to one another and share many common elements, these cases have been consolidated for decision.

Having carefully considered the arguments of counsel at the *ore tenus* hearing on December 22, 2011, as well as the pleadings, legal memoranda, and exhibits introduced by the parties, the Court, for the reasons set forth below, will deny defendants' motions to dismiss.

### Summary of the Facts

Between October 13, 2010, and April 24, 2011, the defendants were each stopped and ticketed for traveling 50 to 54 miles per hour (mph) somewhere

between the 300 and 600 block of the Route 250 Bypass. The Route 250 Bypass is a limited access highway, *see* Va. Code § 33.1-57, and the area of the Bypass at issue is marked by signs as a 35 mph zone. Code of the City Charlottesville § 15-99.

On March 18, 1957, the Charlottesville City Council approved a resolution, affirming its support of the Interstate Highway and Defense System plan for the widening of Route 250. (Defs.'s Ex. 8.) The Route 250 Bypass through the City of Charlottesville was constructed in two phases, the first phase began in 1957 and the second phase began in 1967. (Defs.'s Ex. 2.)

On July 3, 1967, a traffic survey was presented to the Charlottesville's City Council recommending speed limits for several business and residential streets. (Defs.'s Ex. 7 (Minutes of the Charlottesville City Council, July 3, 1967).) At that meeting, the City Manager reported that the City Attorney and Commonwealth's Attorney had advised him on the necessity of such a survey. *Id.* On motion, the traffic survey was accepted, and the City Attorney was directed to prepare the proper ordinances based on that report. *Id.*

A month later, the City Council adopted an ordinance that amended the speed limits on a number of streets within the City of Charlottesville, including the Route 250 Bypass. (Comm.'s Ex. 2 (City ordinance adopted by the Council, August 7, 1967).) The ordinance reflects that it was enacted "[p]ursuant to an engineering and traffic survey as required by § 46.1-180" of the Code of Virginia. *Id.*

While certain provisions of the speed limit ordinance have changed over time, including those relating to the Route 250 Bypass, *see* Comm.'s Ex. 3 (raising the speed limit on a separate portion of the Route 250 Bypass from 40 mph to 45 mph), the substantive provisions of the 35 mph speed limit have remained unchanged. The only change to the 35 mph speed zone was made on March 19, 1984, by ordinance which inserted the word "westernmost" before the words "McIntire Park Entrance" as was reflected in the previous ordinance. (Comm.'s Ex. 4.)

Since 1967, all subsequent reenactments of the speed limit ordinance, including the current provision found in Charlottesville City Code § 15-99, reflect that the speed limits over the Route 250 Bypass were established pursuant to a required traffic and engineering survey. The parties, however, have been unable to locate any traffic engineering and traffic survey related to the decreased speed limits established on the Route 250 Bypass. (*See* Defs.'s Ex. 3 (March 18, 2011, letter from the Charlottesville City Attorney.)

*Issues Presented*

(1) Does Virginia Code § 46.2-878 create an unconstitutional mandatory rebuttable presumption effectively relieving the Commonwealth of the burden of proof as to an element of a crime?

(2) If so, does § 46.878's rebuttable presumption violate an accused's right to confront testimonial evidence?

(3) Is the City of Charlottesville ordinance decreasing the speed limit on the Route 250 Bypass unenforceable and without effect due to defects in its enactment and in the absence of approval by the Transportation Commission?

## Legal Analysis

In Virginia, the maximum speed limit on limited access highways is typically 55 mph. *See* Va. Code § 46.2-870. A local ordinance passed by the City of Charlottesville, however, sets the maximum speed limit for the relevant portion of the Route 250 Bypass at 35 mph. Code of the City Charlottesville § 15-99 (establishing a 35 mph maximum speed limit on the Route 250 Bypass from the east corporate limits to the westernmost entrance of McIntire Park).

"[T]he Commissioner of Highways or other authority having jurisdiction over highways" has the power to decrease, but not increase, the maximum speed limit on limited access highways within its jurisdiction. *See* Va. Code § 46.2-878. Any such change is to be effective only when "prescribed after a traffic engineering investigation and when indicated on the highway by signs." *Id.* Further, for "highways under the control of the Commissioner of Highways," such decreases in speed limit "shall be effective only when prescribed in writing by the Commissioner of Highways" and kept on file in the Department of Transportation's central office. *Id.* Notably, § 46.2-878 provides that there "shall be a rebuttable presumption that the change in speed was properly established in accordance with the provisions of this section" whenever such speed decrease has been properly posted. *Id.*

It is uncontested that the City of Charlottesville is an "authority having jurisdiction over highways" within the meaning of § 46.2-878. Such a conclusion is supported by the authority granted to localities by statute to change the speed limit of highways within their boundaries. *See id.* § 46.2-1300. Under Virginia Code § 46.2-1300, localities, like the City of Charlottesville, may change the maximum speed limit of the highways within their jurisdiction provided that the ordinances they pass comply with the provisions of Title 46.2, that such change in speed "shall be based upon an engineering and traffic investigation" by such locality and "provided such speed area or zone is clearly indicated by markers or signs." *Id.* § 46.2-1300. It was pursuant to substantially similar provisions that the Charlottesville City Council passed the original speed ordinance in 1967. *See* Va. Code Ann. § 46.1-180(a) (1966) (authorizing localities to adopt ordinances to "increase or decrease the speed limit within their boundaries" provided that such increase or decrease was based "an engineering and traffic investigation," that such speed area or zone was clearly marked by

signs and that such change in the speed limit was not in conflict with the title on motor vehicles); *id.* § 46.1-193(3) (1966) (granting the State Highway Commissioner or "other authority having jurisdiction over highways" the power to decrease speed limits on limited access highways provided such decrease was prescribed "after an engineering and traffic investigation" and when indicated by signs).

The current Route 250 speed provision sets the maximum speed limit on the Route 250 Bypass from the east corporate limits to the westernmost entrance of McIntire Park at 35 mph. Code of the City of Charlottesville § 15-99. Any violation of this provision is unlawful and shall "constitute a traffic infraction punishable by a fine of not more than that provided for a Class 4 misdemeanor under Virginia Code § 18.2-11, plus any additional monetary penalty that may be allowed by law for serious traffic offenses." *Id.* § 15-2; *accord* Va. Code §§ 46.2-113, 46.2-878.

Defendants raise several constitutional and statutory challenges. They first argue that Virginia Code § 46.2-878 violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution, as applied and on its face, by establishing an unconstitutional mandatory presumption that properly posted speed limits are validly established. The defendants also maintain that the Commonwealth violated their due process and Sixth Amendment rights to confront testimonial evidence by failing to produce certain documents. Additionally, defendants allege that the City of Charlottesville failed to follow the necessary procedures outlined in Virginia Code §§ 46.2-878 and 46.2-1300 when it established the 35 mph maximum speed limit on a portion of the Route 250 Bypass, and therefore, the ordinance is without legal efficacy. An ordinance passed by a locality that exceeds the authority granted to it by the General Assembly is also *ultra vires* according to the Dillon Rule. *See Advanced Towing Co. v. Fairfax County Bd. of Supervisors*, 280 Va. 187, 193, 694 S.E.2d 621, 624 (2010). Finally, the defendants argue that because certain aspects of speed limit signs on bypasses must be approved by the state Transportation Commission, *see* Va. Code §§ 33.1-39, 33.1-46, speed limits established pursuant to §§ 46.2-878 and 46.2-1300 are void in the absence of such approval.

A. *Constitutional Challenge*

Whenever the constitutionality of a statute is challenged, the "determination of legislative intent is guided by the recognition that 'all actions of the General Assembly are presumed to be constitutional'." *Copeland v. Todd*, 282 Va. 183, 715 S.E.2d 11 (2011) (quoting *Virginia Society for Human Life v. Caldwell*, 256 Va. 151, 157, 500 S.E.2d 814, 818-19 (1998)). Statutory language shall therefore be interpreted "in a manner

that avoids a constitutional question" whenever possible. *Commonwealth v. Doe*, 278 Va. 223, 682 S.E.2d 906 (2009).

Further, the defendants not only challenge the speed limit as it applied to them, but on its face as well. As a general rule, "[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-55 (1979). Thus, "where a statute is constitutional as applied to a litigant, the litigant has no standing to challenge the statute on the ground that it may be unconstitutional on its face, that is, as applied to a third person in a hypothetical situation." *Esper Bonding Co. v. Commonwealth*, 222 Va. 595, 597, 283 S.E.2d 185, 186 (1981); *see also DePriest v. Commonwealth*, 33 Va. App. 754, 761, 537 S.E.2d 1, 4 (2000) ("An individual may challenge the constitutionality of a law only as it applies to him or her.").

Due process requires the prosecution to prove every element necessary to establish the crime charged beyond a reasonable doubt. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). As to the crime with which they were charged, speeding, the defendants maintain that the validity of the Route 250 Bypass speed ordinance is an element of the crime that must necessarily be proven by the Commonwealth. That is, according to the defendants, to charge someone for violating Charlottesville's speeding ordinance, the Commonwealth must prove beyond a reasonable doubt that the ordinance was passed pursuant to a traffic and engineering investigation as required by §§ 46.2-878 and 46.2-1300. But because § 46.2-878 creates a rebuttable presumption that the law is valid when signs have been properly posted, the defendants argue that § 46.2-878 unconstitutionally relieves the burden of proof from the Commonwealth.

But it is the Charlottesville ordinance which establishes the elements of the crime, not § 46.2-878. Each defendant is charged with traveling 50 or more mph on the Bypass's 35 mph zone. According to the plain language of the City ordinance, these acts are violations of § 15-99 and are unlawful. Code of the City of Charlottesville § 15-99; *id.* § 15-2; *accord* Va. Code §§ 46.2-113, 46.2-878. In this case, due process requires the Commonwealth to prove certain facts beyond a reasonable doubt such as the speed and location of the car. But due process does not require the Commonwealth to prove that the ordinance was itself properly established. In fact, those who challenge the establishment of the speed ordinance bear the burden of proof. *See Copeland*, 282 Va. 183, 715 S.E.2d 11 (Acts of the General Assembly are presumed to be constitutional); *Hinderliter v. Humphries*, 224 Va. 439, 448, 297 S.E.2d 684, 689 (1982) ("There is a presumption that public officials will obey the law."). Here, that burden is made even clearer by § 46.2-878 which establishes a rebuttable presumption that the ordinance was lawfully passed.

The defendants' due process and Sixth Amendment claim fails for similar reasons. Defendants lack a constitutional right to confront the traffic and

engineering survey because the survey cannot and is not being used against them in a testimonial fashion. *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The traffic and engineering survey is simply not relevant to an element of the crime established by Charlottesville Code § 15-99.

## B. *Statutory Challenge*

Virginia Code §§ 46.2-878 and 46.2-1300 establish the necessary procedures for the City of Charlottesville to create a decreased speed limit on a limited access highway. *See* Va. Code §§ 46.2-878, 46.2-1300. Defendants contend that the City of Charlottesville has failed to pass its ordinance as required and it is therefore without effect and unenforceable.

According to § 46.2-878, however, there is a rebuttable presumption that the speed limits were properly established. *See id.* § 46.2-878. When a rebuttable presumption pertains to an element of the offense, it is generally given a "permissive or burden-of-production-shifting effect only." *Yap v. Commonwealth*, 49 Va. App. 622, 643 S.E.2d 523, 528 (2007). A permissive inference merely shifts the burden of "proving some evidence contesting a fact that may otherwise be inferred" to the defendant and is not an unconstitutional shift of the burden of proof. *Id.* at 527.

In this case, the rebuttable presumption at issue is not related to the elements of the offense; rather, it only presumes the validity of the decreased maximum speed limit. The law therefore explicitly presumes that the Route 250 Bypass speed ordinance was "prescribed after a traffic engineering investigation." *See* Va. Code § 46.2-878. Under well-established precedent, "there is a presumption that public officials will obey the law," *Hinderliter*, 224 Va. at 448, 297 S.E.2d at 689; furthermore "[i]n the absence of clear evidence to the contrary, [courts] must presume that a public officer has properly discharged his official duties." *Gilmore v. Landsidle*, 252 Va. 388, 396, 478 S.E.2d 307, 312 (1996). Here, defendants failed to provide "clear evidence" to rebut the presumption that the speed limits on the Route 250 Bypass were enacted pursuant to the provisions of Title 46.2.

Indeed, all available evidence points to the fact that the Charlottesville City Council did exactly what was required of them. While the sparse minutes of the July 3, 1967, City Council meeting lack much context and detail, it clearly indicates that a traffic survey was performed and that it was done on the advice of lawyers from both the city and the Commonwealth. It further indicates that the City Attorney was directed to prepare an ordinance based on that report. Just a month later, the City Council adopted such an ordinance which, by its terms, reflect that it was enacted "[p]ursuant to an engineering and traffic survey as required" by law. Further, every subsequent reenactment and amendment also reflects that the ordinance was passed pursuant to traffic and engineering surveys. *See e.g.*, (Comm.'s

Ex. 3 (November 19, 1973, ordinance)), (Comm's Ex. 4) (March 19, 1984, ordinance)), Code of the City Charlottesville § 15-99.

The City's speed limit ordinance is not invalidated simply because a 45 year-old traffic survey cannot be produced. Nowhere in § 46.2-878 or § 46.2-1300 is there a requirement for a city to keep, file, or maintain a copy of any traffic or engineering report performed. The fact that the 1967 ordinance was passed before the completion of the relevant portion of Route 250 Bypass was constructed does not mean that the 1967 traffic and engineering study was not based on and modeled off of the Bypass's construction plan and specifications. Moreover, even though there is a possibility that a traffic and engineering survey was never performed, it was the General Assembly's decision in § 46.2-878 to place the burden of proving such facts on those who seek to invalidate the law.

The rebuttable presumption contained in § 46.2-878 also applies to whether a decrease in speed limit is "prescribed in writing by the Commissioner of Highways and kept on file in the Central Office of the Department of Transportation." *See* Va. Code § 46.2-878. For purposes of this case, it is uncontested that the Route 250 Bypass is "under the control" of the Commissioner of Highways. Defendants submitted a request under the Virginia Freedom of Information Act to the Commonwealth Transportation Board for "a copy of any traffic engineering and traffic survey studies as required by § 46.2-878 of the Code of Virginia" and for documentation or information related to the source of funding for the Route 250 Bypass in Charlottesville. (Def's Ex. 1.) The record reflects, however, that the Culpeper District of the Virginia Department of Transportation responded to a separate e-mail request for "records *related to the funding source*" of the Route 250 Bypass only and that such information was unable to be located. (Def's Ex. 2.) There is no evidence in the record indicating that the decreased Route 250 Bypass speed limit is not "prescribed in writing" and kept on file in the Central Office of the Department of Transportation as required.

Finally, the statutory requirements found in Virginia Code §§ 33.1-39 and 33.1-46 subjecting the "location, form, and character" of signs on bypasses to be approved by the Commissioner of Highways are not relevant to this case. First, there is no evidence that the signs on the Route 250 Bypass have been disapproved; regardless, §§ 33.1-39 and 33.1-46 are contained in a wholly separate title from the speed provisions and only provide that the Commissioner may regulate the appearance and manner of display of signs, not their substance.

*Conclusion*

Based on the foregoing, defendants' motions to dismiss should be denied. These cases are continued for final disposition.