## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Brian S. Patton

October 29, 2013

Case No. MI-2013-0001336

By Judge Randy I. Bellows

This matter came on appeal from the General District Court for Fairfax County on October 22, 2013. At that time, the Court heard evidence in a bench trial and took the matter under advisement. For the reasons stated below, the Court finds the Defendant not guilty.

*Introduction*

This case presents the following three questions.

First, in determining whether a defendant has committed a traffic infraction by driving a motor vehicle in a designated HOV lane in violation of Virginia Code § 33.1-46.2, should the Court consider whether the HOV lane has been "appropriately marked" and the terms of the HOV restrictions "plainly posted," as required by statute?

Second, if the Court may do so, are the HOV warning signs on the inner loop of Interstate 495 Northbound ("Beltway") prior to the entrance to Interstate 66 ("I-66") East "appropriately marked" and "plainly posted"?

Third, if the Court finds that the HOV warning signs prior to the entrance to I-66 East from the inner loop of the Beltway are inadequate under the statute, may a defendant who entered I-66 from the Beltway be found guilty of a First Offense HOV traffic infraction?

For the reasons stated in this Opinion, the Court finds, first, that it should consider whether the HOV lanes on I-66 have been "appropriately marked" and its restrictions "plainly posted." Second, the Court finds that the HOV warning signs that appear on the inner loop of the Beltway prior to the entrance to I-66 East are not "appropriately marked" and "plainly posted" because they do not make clear, as do the HOV warning signs on I-66 East outside the Beltway, that the HOV restriction applies to all lanes. Finally, the Court finds the Defendant, who entered I-66 East from the inner loop of the Beltway, not guilty of the traffic infraction at issue.

To be clear, this case does not turn on the good faith or bad faith of the Defendant with regard to whether he understood the all-HOV status of I-66 East inside the Beltway during the hours in question. This is because the charged infraction does not require a specific intent to break the law. See *Esteban v. Commonwealth*, 266 Va. 605, 609, 587 S.E.2d 523 (2003) ("[T]he law is clear that the legislature may create strict liability offenses as it sees fit . . . [t]hus, courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime."); see also *Chibikom v. Commonwealth*, 54 Va. App. 422, 424, 426, 680 S.E.2d 295 (2009) (affirming the trial court's decision that reckless driving by speed under Va. Code § 46.2-869 is a strict liability offense); *Commonwealth v. Walsh*, 62 Va. Cir. 511, 513 (Culpeper 2003) (holding that driving on a suspended license under Va. Code § 46.2-301 and operating a motor vehicle on the highway knowing that fees had not been paid to the Commission in violation of Va. Code § 46.2-707 were strict liability offenses that "related only to the fact that the Defendant operated the vehicle at all"). Like the reckless driving statute in *Chibikom* and the traffic offenses in *Walsh*, Va. Code § 33.1-46.2 does not include a *mens rea* or *scienter* requirement; therefore, this Court construes that statute to designate a strict liability offense.

Having said this, if the Court was required to make a finding regarding the Defendant's good faith belief, the evidence is uncontradicted, and the Commonwealth concedes, that the Defendant sincerely believed that the HOV sign only applied to a lane of I-66 East, not all of the lanes of I-66 East. The evidence before the Court indicated that the Defendant was a member of the United States military, who recently relocated to this area, and he was not familiar with the fact that all lanes of I-66 East inside the beltway were HOV during certain hours of the day.

## I. *Procedural History*

The Defendant in this case, Brian S. Patton, was cited for a First Offense HOV violation under Virginia Code § 33.1-46.2 and appeared in the General District Court for Fairfax County on July 23, 2013. After pleading *nolo contendere* and being found guilty, the Defendant appealed his conviction. This Court heard evidence in a *de novo* bench trial held on

October 22, 2013, and took the matter under advisement. This Letter Opinion details the Court's holding in this matter and the resolution of the Defendant's Appeal.

## II. *Facts Pertinent to the Case*

On June 4, 2013, at 7:40 A.M., the Defendant was stopped on I-66 East by Virginia State Trooper Q. M. Garber for an alleged High-Occupancy Vehicle ("HOV") lane violation under Va. Code § 33.1-46.2. At trial, Trooper Garber stated that he had pulled Mr. Patton over on that portion of I-66 East inside the Beltway in which all lanes are HOV-2+ only between the hours of 6:30-9:00 A.M, Monday-Friday. Specifically, the Uniform Summons states that the location of the offense is "M[ile] P[ost] 66" on I-66, which is slightly after entering I-66 East from I-495 North. See Virginia Uniform Summons, No. 001-21810255. There is no evidence before the Court that the Defendant had the opportunity to exit I-66 East once he had entered upon it before being stopped by the Trooper. Thus, the focus of this Opinion is on the signage on I-495 North that warns a driver of the HOV status of I-66 East before a driver commits to entering I-66 East. Mr. Patton testified that he had entered I-66 East from I-495 Northbound at Exit 49B, and provided photographic evidence of the sign that is located at Exit 49B. Trooper Garber confirmed that the sign at Exit 49B does not include language that states that the HOV status of the road applies to "all lanes." Specifically, if a driver enters I-66 East from I-495 Northbound at Exit 49B, as Mr. Patton testified he did in this case, the sign that is displayed is as follows: "< > 66 East; Washington; HOV-2+ ONLY; 6:30-9 AM M-F."

In contrast, if a motorist is traveling on I-66 East prior to its intersection with the Beltway, there are signs which indicate that *all* lanes of I-66 East become HOV-2+ only inside the Beltway. According to photographic evidence Mr. Patton presented at trial the signs on this portion of I-66 include the diamond symbol (< >) that designates HOV lanes and the following language: "< > 66 East; Washington; ALL LANES; HOV-2+ ONLY; 6:30-9 AM M-F."

Mr. Patton testified that he is in the military and was recently assigned to the National Guard Bureau in Arlington, Virginia. The Uniform Summons indicates a New York home address and a New York driver's license for the Defendant. See Virginia Uniform Summons, No. 001-21810255. He testified that he lived most of his life in the Midwest, but has been in the Washington, D.C., area "on and off" since 2011. He also stated that he just began driving to work when he was assigned to the National Guard Bureau in May 2013. Prior to that time, he was stationed at a location in Virginia to which he walked. While he indicated that he has done some limited driving around the area, Mr. Patton testified that he was not familiar with this area of I-66 and normally took Interstate 395 to work from his home in Springfield, Virginia. He asserted that, although he is familiar with

HOV lanes in general, he had not previously been aware of any highways or interstates in which the entire road became an HOV-only road during the relevant days and times.

Thus, the following facts are undisputed: (1) Mr. Patton was driving I-66 East on a Tuesday at 7:30 A.M., i.e., at a time when HOV is effective on I-66 East; (2) Mr. Patton entered I-66 East from I-495 North at Exit 49B; (3) The sign above Exit 49B does not include the language "all lanes," or similar language.

At trial, the Commonwealth argued that, regardless of Mr. Patton's knowledge of the nature of the HOV lanes, the statute mandates strict liability, and thus, Mr. Patton should be found guilty of the offense. Mr. Patton argued that the signage on the relevant portion of I-66 was ambiguous and did not properly notify him that the entire road was HOV at the time he entered the interstate. Mr. Patton claimed that, because the signs did not say "all lanes," he was unaware that the entire road, rather than just a single lane, was HOV only. The Commonwealth responded that the other signs on I-66 include the "all lanes" notification because they are alerting motorists to the fact that I-66 East progresses from a multi-lane highway with one HOV lane, to a primarily two-lane highway with the entire road consisting of HOV only. Mr. Patton asserted that all signs leading to this portion of I-66, i.e., from any access point, should indicate that the HOV restrictions apply to "all lanes." Therefore, Mr. Patton asks that the Court find him not guilty of the HOV violation under Va. Code § 33.1-46.2.

After the conclusion of the trial on October 22, 2013, the Defendant contacted Chambers to request that the Court view an email communication between the Defendant and Mr. Ivan Horodyskyj, the Program Manager for the Traffic Engineering Section of the Virginia Department of Transportation (VDOT). Prior to viewing the emails, the Court contacted the Commonwealth to confirm that it did not have an objection to the Court viewing the communication. Mr. Horodyski's email reads as follows:

> Sir, you are correct in stating that the signs should be consistent. However, to add the "ALL LANES" message to the Exit 49B sign will require a larger sign to accommodate the additional line of text, and the structure that holds the existing signs cannot support the larger sign for structural reasons. Replacing the structure would be very expensive.
>
> To reinforce the overhead message that you are entering a restricted facility, the most cost-effective alternative is to add the diamond HOV pavement markings to the ramp, since it is a single lane at that point. However, the mainline of I-66 eastbound and westbound will not have additional HOV pavement markings applied inside the Beltway.
>
> Look for the pavement markings to be installed on the ramp of Exit 49B in the near future, workload and weather

permitting (we need dry pavement above 50 degrees F for the paint to stick).

While the Court did review this email, the communication is not being considered in this Opinion as it was provided to the Court after the conclusion of the trial.

### III. *Relevant Background and Authority*

#### A. *Brief Background Regarding the Development of I-66*

Prior to and during the 1970s, I-66 was constructed from I-81 in Strasburg, Virginia, to the Arlington County line. See *Arlington Coal. on Transp. v. Volpe*, 458 F.2d 1323, 1327 (4th Cir. 1972). However, in 1972, construction was enjoined on the portion between the Beltway and Rosslyn, Virginia, due to a public controversy regarding the failure to comply with the National Environmental Policy Act of 1969 ("NEPA"). See *id.* at 1339 (granting an injunction of further construction on I-66 until Virginia filed an environment impact statement in accordance with NEPA).

In 1977, the U.S. Secretary of Transportation, William T. Coleman, Jr., approved a federal grant for the funding of the remainder of I-66, contingent on the Commonwealth's agreement that the portion of I-66 inside the Beltway would be restricted to carpools, emergency vehicles, buses, and vehicles to and from Dulles Airport during peak travel hours. Department of Transportation, Secretary's Decision on Interstate Highway 66, Fairfax and Arlington Counties, Virginia, 42 (1977).

In a written decision detailing this approval, Coleman stated:

I have taken the conservative approach of making it a condition in my approval of I-66 that the State of Virginia agree, in a legally binding document, not to remove these limitations without concurrence by the authorized transportation planning body for the metropolitan Washington area, as well as by this Department, or unless directed to do so by the Secretary of Transportation. . . .

*Id.*

Following this decision, the Fourth Circuit denied further challenge to the construction of I-66 and found that the carpooling restrictions complied with NEPA. See *D. C. Fed'n of Civic Assoc. v. Adams*, 571 F.2d 1310, 1314 (4th Cir. 1978) (rejecting additional challenges to the construction of I-66 following Coleman's decision). On January 20, 1983, the Virginia State Highway and Transportation Committee approved a motion to execute the federal mandate contained in Coleman's Decision and instituted

travel restrictions on I-66 inside the Beltway. See State Highway and Transportation Commission, Minutes of Meeting of State Highway and Transportation Commission, Richmond, Virginia, 29 (1983).

The HOV configuration on I-66 inside the Beltway is different from most other HOV arrangements in that it turns an entire highway into an HOV-only road during peak hours. In its Review of HOV Lane Performance and Policy Options in the United States, the Federal Highway Administration ("FHWA") stated that "the vast majority of HOV facilities" have only one HOV lane in each direction, while the rest of the road contains general traffic lanes. Federal Highway Administration, Review of HOV Lane Performance and Policy Options in the United States, Section 2 (December 2008). The FHWA further reported that, as of 2008, only one active facility had two HOV lanes in each direction, although several others were being built at the time. *Id.* However, the report did not identify any examples of an HOV facility in which the entire road became accessible only to HOV drivers. *Id.*

B. *Should a Court Determine Whether HOV Lanes Are "Appropriately Marked" and Its Restrictions "Plainly Posted" under Va. Code § 33.1-46.2 in Connection with the Trial of an Alleged HOV Violation?*

In order to facilitate the implementation and enforcement of carpool lanes by the State Highway and Transportation Commission, the Virginia legislature enacted Va. Code § 33.1-46.2, which is titled "Designation of high-occupancy vehicle lanes; use of such lanes; penalties." In authorizing the designation of HOV lanes, Section A also mandates the markings that must be present in HOV lanes:

> In order to facilitate the rapid and orderly movement of traffic to and from urban areas during peak traffic periods, the Commonwealth Transportation Board [the successor to the State Highway and Transportation Commission] may designate one or more lanes of any highway in the interstate, primary, or secondary highway systems as high-occupancy vehicle lanes, hereinafter referred to in this section as HOV lanes. *When lanes have been so designated and have been appropriately marked with such signs or other markers* as the Board may prescribe, they shall be reserved during periods designated by the Board for the exclusive use of buses and high-occupancy vehicles. . . .

Va. Code § 33.1-46.2 (emphasis added). The requirement that an HOV lane be appropriately marked with clear and unambiguous markings is reinforced by Section B of § 33.1-46.2, which states:

> In designating any lane or lanes of any highway as HOV lanes, the Board, or local governing body as the case may be, shall specify the hour or hours of each day of the week during which the lanes shall be so reserved, *and the hour or hours shall be plainly posted* at whatever intervals along the lanes the Board or local governing body deems appropriate. Any person driving a motor vehicle in a designated HOV lane in violation of this section shall be guilty of a traffic infraction which shall not be a moving violation and on conviction shall be fined $100.

Va. Code § 33.1-46.2 (emphasis added). The emphasis placed throughout the statute on proper signage and markings demonstrates the importance of markings that place the public on notice of the rules and regulations related to designated HOV lanes.

Although both portions of the statute refer to markings in the "lanes," the Court interprets this language to also require appropriate signage on the access roads that lead into the HOV lanes. To conclude otherwise would be to deem signage to be "plainly posted" even where that signage only appears in locations where it is too late to avoid driving in violation of HOV restrictions. If, as the Court finds to be the case, a principal purpose of HOV signage is to warn drivers about the restrictions, a warning, *to be effective*, must appear at a location where a driver can actually act upon the warning to avoid the HOV violation.

Thus, when proper notice is challenged, these statutory requirements call on the court to determine whether they have been fulfilled before a court can find a defendant guilty of a violation of § 33.1-46.2.

### C. *Case Law Regarding the Posting Requirement in Connection with Traffic Offenses*

What guidance does case law provide regarding the requirement of appropriate posting of traffic signs? Courts often evaluate traffic regulations in light of the highway sign on which an offense is predicated in order to determine whether a specific defendant or the facts of an offense fall under that statute. See *Bahen v. City of Hampton*, 2004 Va. App. LEXIS 504, at *5-6 (October 26, 2004) (finding that a trial court erred in excluding a defendant's proffered evidence that a speed limit sign was not properly posted under Va. Code § 46.2-878 due to the city's alleged failure to conduct a traffic or engineering study under Va. Code § 46.2-1300 prior to decreasing the speed limit); see also *Plofchan v. Commonwealth*, 2007 Va. App. LEXIS 188, at *3, *6 (May 8, 2007) (affirming the trial court's decision that the Commonwealth failed to prove that the decreased speed limit had been properly posted under Va. Code § 46.2-878, but finding the defendant guilty of a lesser-included offense under Va. Code § 46.2-870); *Commonwealth v.*

*Tocci*, 84 Va. Cir. 359, 364-65 (Charlottesville 2012) (denying defendants' motions to dismiss violations of Va. Code § 46.2-878 and holding that the rebuttable presumption in § 46.2-878 is constitutionally valid). Like Va. Code § 46.2-878, which requires that a speed limit sign must be "properly posted" and may establish an increased or decreased speed only after a traffic or engineering study has been completed, Va. Code § 33.1-46.2 requires that a sign must be "appropriately marked" and "plainly posted." As demonstrated by the above case law, a finding as to whether a sign is appropriately marked, plainly posted, or properly posted, when timely raised as it was here, is a question that a court may, and should, determine prior to finding a defendant guilty.

Although there is no Virginia authority directly on point regarding appropriate markings for HOV lanes, Virginia courts have discussed proper signage in other contexts. In *Bahen*, Plofchan, and Tocci, cited above, the courts discussed the requirements for posting speed limits in Va. Code §§ 46.2-878 and 46.2-1300. Va. Code § 46.2-878 provides that: "Whenever the speed limit on any highway has been increased or decreased or a differential speed limit has been established and such speed limit *is properly posted*, there shall be a rebuttable presumption that the change in speed was properly established in accordance with the provisions of this section." § 46.2-878 (emphasis added). This section also mandates that an increased or decreased speed limit shall only be effective after a traffic engineering investigation has occurred and the change has been indicated on signs. Like Va. Code § 33.1-46.2, § 46.2-878 includes requirements for a properly posted speed limit sign in the same statute that provides for a violation of that sign.

In *Bahen v. County of Henrico*, the Virginia Court of Appeals found that the Defendant had violated the posted speed limit under § 46.2-878, despite the Defendant's argument that the speed limit was improperly posted because the limit was only twenty-five miles per hour and the road was a highway. 30 Va. App. 227, 233, 516 S.E.2d 250 (1999). The Defendant argued that, because he was on a highway, as opposed to a residential district, he was driving at a safe speed, although he was driving above the posted speed limit. *Id.* at 228. The court held that the Defendant was guilty because he had conceded he was exceeding the posted speed limit and failed to rebut the presumption that the speed limit was properly posted. *Id.* at 233.

In *McDowall & Wood, Inc. v. Kilby*, the Virginia Supreme Court found that appropriate signs and barricades alerting motorists to a ditch in the highway, in addition to the plaintiff's prior knowledge of the signs, barricades, and construction, demonstrated that the plaintiff assumed the risk when driving into a ditch on the highway. 211 Va. 476, 477-78, 178 S.E.2d 497 (1971). The Plaintiff, a Virginia State Trooper, was patrolling during the midnight shift when he drove into a ditch that was present on the highway. *Id.* at 477. During trial, the Trooper admitted that he saw signs

in the area earlier in the day, witnessed construction equipment digging a ditch, and saw traffic being routed around the area under construction. *Id.* at 478. In light of the proper signage, as well as the Trooper's knowledge of the situation, the court found that he had assumed the risk of the accident when he drove on that area of the highway. *Id.*

In *Commonwealth v. Fioramanti*, the Circuit Court for Loudoun County held that a Defendant was not guilty of driving on an airport-only access road under Va. Code § 46.2-830 because the signs did not properly alert drivers to the road restriction. 37 Va. Cir. 599, 600 (1994). The court noted that the Commonwealth Transportation Board ("Board"), the "Board" referred to in § 33.1-46.2, has adopted the U.S. Department of Transportation's Manual on Uniform Traffic Control Devices ("MUTCD") as the standard for traffic markings in Virginia. *Id.* Because the sign at issue did not comport with the "sign color" requirements of the MUTCD, the court found that it could not serve as the basis for a conviction under § 46.2-830. *Id.* at 601.

In *Fioramanti*, the court cited Va. Code § 46.2-830 as authority for the Board's adoption of the MUTCD. *Id.* at 600. Section 46.2-830 states:

> The Commissioner of Highways may classify, designate, and mark state highways and provide a uniform system of traffic control devices for such highways under the jurisdiction of the Commonwealth. Such system of traffic control devices *shall correlate with and, so far as possible, conform to the system adopted in other states.*

Va. Code § 46.2-830 (emphasis added). While the statute does not expressly name the MUTCD, the statutes' mandate to "conform to the system adopted in other states" suggests that the Board should employ a uniform system of traffic control devices similar to the MUTCD. Furthermore, the Commonwealth Transportation Board has passed numerous resolutions adopting the MUTCD, with the most recent resolution adopting the MUTCD (2009 edition) and the Virginia Supplement to the MUTCD (2011 edition), a supplement approved by the FHWA to include state standards that exceed minimum federal requirements. See Resolution of the Commonwealth Transportation Board, Adoption of Manual on Uniform Traffic Control Devices (MUTCD), Virginia Supplement to the MUTCD, and Related Regulatory Consolidation, December 7, 2011. While the MUTCD does include information related to HOV traffic control devices in Chapters 2G and 3D, the Court's review of the MUTCD did not reveal any provisions exactly on point. See Federal Highway Administration ("FHWA"), Manual on Uniform Traffic Control Devices for Streets and Highways (2009 ed.). Rather, it appears that the MUTCD does not address an HOV configuration such as that present on I-66, where the entire road becomes HOV only, as opposed to a highway where only one or two lanes are separated from the general purpose lanes of the highway by a line or barricade.

D. *May a Defendant Be Found Guilty of a Violation of Va. Code § 33.1-46.2 If the HOV Lanes Are Not "Appropriately Marked" or the Terms of the HOV Restrictions Are Not "Plainly Posted"?*

Sections 1A.01 and 2A.01 of the MUTCD highlight the importance of signs and other traffic control devices. "Traffic control devices notify road users of regulations and provide warning and guidance needed for the uniform and efficient operation of all elements of the traffic stream . . . [w]ords, symbols, and arrows are used to convey the messages." See FHWA Manual, *supra*, at 1, 27. Highway signs and markings provide notice to the public as to the rules, restrictions, and regulations that every motorist is expected to follow. It follows that an individual cannot be found guilty of a traffic offense if the sign that the offense is predicated upon is not properly posted or appropriately marked. This conclusion is supported by the requirements of Va. Code § 33.1-46.2 and the case law discussed below.

It is clear from the statutory language that the requirements that HOV lanes be "appropriately marked" and its restrictions "properly posted" are conditions precedent to finding a defendant guilty under this statute. Both of these requirements appear prior to the violation provisions of the statute and mandate that the Board must establish the appropriate markings in HOV lanes in order for those lanes to "be reserved during periods designated by the Board for the exclusive use of buses and high-occupancy vehicles." Although the "appropriately marked" language is located in Section A of the statute, while the "plainly posted" language is located in Section B, the Court finds that both phrases must be considered in determining whether signage is appropriate as a predicate for finding a defendant is in violation of the statute. This interpretation is reinforced by the holdings of other Virginia courts in traffic cases. See Va. Code § 46.2-878 (mandating that speed limit signs must be "properly posted"); *Plofchan*, 2007 Va. App. LEXIS, at *3, *6; *Bahen*, 2004 Va. App. LEXIS, at *5-6; *Tocci*, 84 Va. Cir. at 364-65. In sum, Va. Code § 33.1-46.2 unambiguously requires that HOV lanes be "appropriately marked" and its restrictions "plainly posted" before an HOV lane may fall under the protection of the statute. Therefore, the Court must decide whether the markings and signs at Exit 49B are appropriate before the Court can find the Defendant guilty of the alleged violation. If not, the Defendant cannot be convicted of a First HOV violation.

## IV. *Analysis*

First, the focus of this Opinion is on the signage on I-495 North prior to the I-66 East entrance, and not on the signage that appears on I-66 East itself. This is because such signage as exists on I-66 East could not serve as fair warning to a driver that the roadway is all lanes HOV for the obvious reason that a solo driver who views these signs on I-66 East during

the pertinent HOV hours is already in violation of the HOV restrictions. Therefore, the signage at issue is the signage that appears at the access point to I-66 East in a location where a driver has the option and the ability to choose not to enter I-66 East. In this case, that access point is I-495 North prior to the entrance to I-66 East at Exit 49B.

Second, the signage that appears on I-66 East outside the Beltway is not before the Court today. That signage, which as described above does contain the ALL LANES HOV-2+ ONLY, would only be relevant if the Defendant had entered I-66 East inside the Beltway from I-66 East outside the Beltway. The undisputed evidence is that he did not

Third, a police officer monitoring HOV compliance on I-66 East may well be unable to determine how a driver entered I-66 East inside the Beltway and, therefore, whether he was subject to the "ALL LANES HOV-2+ ONLY" signage or the "HOV-2+ ONLY" signage. But that is a problem that arises out of the fact that the signage is inconsistent; it has no impact at all on the specific matter before the Court, given the undisputed evidence that this Defendant entered I-66 East from I-495.

Finally, it is beyond the province of this Opinion to state what the signage ought to be on I-495. Rather, this Court's sole responsibility in this case is to decide this case, in other words, to decide whether this Defendant is guilty or not guilty. While the Court must determine whether the signage is adequate under the statute, the Court need not, and therefore must not, prescribe the appropriate signage going forward.

Having made clear what is not before the Court, the Court will now state what is before the Court. Was the signage on I-495 North prior to the entrance to I-66 East sufficient under Va. Code § 33.1-46.2 to provide a driver fair warning that I-66 East inside the Beltway is all lanes HOV during the hours in question? The Court finds that it was not.

In this case, the sign above Exit 49B included the words "HOV-2+ ONLY," but did not indicate that *all lanes* on the highway would be HOV only, unlike the signs on I-66 outside the Beltway. Moreover, the fact that a diamond also appears on the Exit 49B sign compounds the potential for confusion because it suggests that the purpose of the sign is merely to advise drivers that the HOV lane marked with a diamond requires 2+ individuals in the vehicle, rather than some other number of individuals. Signage that does not plainly warn drivers of HOV restrictions does not provide drivers fair warning, and thus, cannot be grounds for a finding of guilt under a statute such as the one now before the Court. Similar to *Fioramanti*, where the defendant could not be found guilty because there was improper signage, the Defendant in this case cannot be found guilty if the signage was insufficient to fairly warn drivers.

Appropriate signage must, at a minimum, warn drivers that the road they are about to enter is all lanes HOV during certain hours. Given that the "vast majority" of HOV roads are one lane in each direction and given

the fact that the highways in Fairfax County are frequented by drivers from all over the United States and elsewhere, not just by long-time local drivers who might be deemed to be familiar with I-66 East's all-HOV status during certain hours, a sign that does not clearly warn drivers that the road ahead is *all lanes* HOV during the pertinent hours cannot be the predicate for finding a defendant guilty.

## Conclusion

The argument in support of finding the Defendant guilty as charged is a variant of the Latin maxim *expressio unius est exclusio alterius*, which is defined in *Black's Law Dictionary* as "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." *Black's Law Dictionary* 661 (9th ed. 2009). In essence, the Commonwealth's argument is this: The sign on I-495 East tells drivers that < > I-66 East during certain hours is HOV-2+ ONLY, and therefore, a driver may deduce that no other part of I-66 East is available for non-HOV vehicles during those certain hours. Even if that were true, however, no driver, especially one attempting safely to negotiate the challenges of driving upon, and exiting from, the Beltway, ought to be required to dissect and analyze the true meaning and implications of a highway sign in order to figure out whether he can or cannot legally drive on a particular road. In sum, the warning needs to be clear and explicit. The warning that appears on I-495 North is neither.

Therefore, the Defendant is found not guilty.